Harden HANKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 60914.

Court of Criminal Appeals of Texas.

Nov. 18, 1981.

On Rehearing March 1, 1983.

**192**

Don Busby, Temple, for appellant.

Arthur C. Eads, Dist. Atty. and James T. Russell, Asst. Dist. Atty., Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ODOM, CLINTON and TEAGUE, JJ.

## OPINION

CLINTON, Judge.

Appeal is taken from a conviction for the offense of burglary of a building. Punishment was assessed by the jury at 20 years confinement in the Texas Department of Corrections.

Appellant complains of the trial court's failure to submit to the jury his timely requested charge regarding the law of circumstantial evidence at the guilt-innocence phase of the trial. The sufficiency of the evidence to show appellant's guilt for the burglary of a building is not challenged; however, in light of our disposition of this appeal, a detailed statement of the evidence adduced is necessary.

Michael Moore, an officer assigned to the vice division of the Killeen Police Department, testified that on March 20, 1978, he responded to a call at The 439 Pawn Shop located in the East Lake Mall in Killeen. On arrival at the scene, he discovered the back door to the pawnshop open.[1] Moore and his partner entered the store and upon closer inspection discovered a number of empty gun boxes strewn on the floor next to a glass display case.[2] A search of the exterior of the building revealed a second possible entry point, an opening through the air conditioning system. Moore testified that there was a rope dangling from the roof to inside the building, and that this was probably the means used to gain access into the building. In addition to the rope, Moore also located a saw, a drill, a chisel and a pair of boots on the roof. The boots, on closer inspection, contained a wallet bearing identification belonging to appellant and a pair of car keys.

Don Morgan, manager of The 439 Pawn Shop, testified that he arrived shortly after being called to the scene by the Killeen Police Department. A review of the store's stock and premises revealed that thirty five new handguns with an invoiced wholesale value of $1,338.71 had been removed from display cabinets in the front of the store. Two of the guns stolen were .22 caliber derringers equipped with over-under barrels and white fake pearl handles, and another

---

1. Moore testified that in his opinion it was the opening of the back door which triggered the magnetic burglar alarm.

2. It was later determined that the guns were removed both from the locked display case as well as the underneath unlocked storage area.

was a .357 magnum with a long barrel. They were never recovered. The police were unsuccessful in lifting any fingerprints from the pawnshop.

Allan L. Mason was the third witness called by the State to testify. On the evening in question, Mason was standing outside his apartment complex on Bundrant Street when he noticed in the distance a man in a jacket holding a bag from which he took what appeared to be a .357 magnum. Upon noticing this suspicious person, Mason returned inside and called the Killeen Police Department. When Mason returned from the phone, the individual was gone. On direct examination by the State, Mason could only testify that the individual he saw that evening looked similar to the appellant. Mason was not asked to make an incourt identification.

David Fails testified that on March 20, 1978, appellant was a temporary resident at the Fails home at 1116 Robindale. On the prior evening, appellant did not return to the Fails residence, and was not seen there until sometime between 9:15 a.m. and 9:30 a.m. the next morning. Fails stated that it was then that he confronted appellant about a billfold containing appellant's identification which had been found at the scene of a pawnshop burglary. Appellant claimed no involvement with the burglary, stating that he had lost his billfold several days earlier.

Randall Howard Carter, a friend of appellant, who also resided temporarily with the Fails, testified that on Thursday night, March 17, 1978, he and appellant had been at the Silver Spur Club, and while they were driving away from the club the clutch in appellant's car broke. So, they left the car parked in a parking lot of Mickey's Drive-In Grocery and took a cab to a motel. Carter stated that he and appellant were together through midafternoon on March 19, 1978. At that time, Carter and Fails dropped appellant off at the Silver Spur Club. Carter testified that he did not see appellant again until 8:00 or 8:30 a.m. on March 20, 1978.

It was on that morning that Carter says he had a conversation with appellant in which appellant indicated that he would have $1,200 by the end of the day. According to Carter, appellant then displayed two pistols which he claimed to have obtained from breaking into a pawnshop. According to Carter, appellant said he had about 36 guns in a brown case under the hood of his car. Carter related that shortly after his conversation with appellant, Mrs. Fails returned home and asked appellant to leave. After appellant left, Carter told Mrs. Fails what he had learned from appellant.

On the basis of facts related in that conversation, Carter and Mrs. Fails drove to appellant's car. Carter testified that he opened the hood of the vehicle and observed a brown satchel. Both he and Mrs. Fails returned home, deciding not to contact the police about their discovery. Instead, Carter returned to appellant's car with another friend three hours later. Once again the hood of the car was opened and a brown bag was observed. It was not until that night that Carter went to the Killeen Police Department to report what he claimed appellant had told him and also to report the observation of the brown bag under the hood of appellant's car. After Carter related his story to the police, they informed him that he was also under suspicion in connection with the burglary. At the close of his testimony Carter admitted to several prior convictions.

Charlene Connor, a friend of appellant's, testified that on March 20, 1978, she received a phone call from appellant asking her to cover with regard to his whereabouts earlier that day. According to Connor, appellant offered her $100 to say she and appellant had been together to anyone who inquired of his whereabouts.

Donna Fails verified her husband's testimony that on March 20, 1978, appellant did not spend the night at their house. She, too, encountered appellant the following morning at her home, but at a different time than her husband. During appellant's conversation with Mrs. Fails, he told her that he had lost his billfold at the Silver

Spur. Mrs. Fails asked appellant to leave the house, and then she and Carter drove to appellant's car to look for a brown bag. Consistent with Carter's testimony, Mrs. Fails claimed to have observed a brown bag under the hood of appellant's car. On the advice of her husband, she decided not to go to the authorities.

Larry Weber, who was employed by Dixon Paving on March 20, 1978, testified that while working near Mickey's Drive-In Grocery he observed an older model black Ford parked nearby. At some point that morning, Weber saw a man, woman and child arrive in a pickup truck and get out and look under the hood of the Ford. About 45 minutes after they left, a young man arrived. Weber observed him go to the car, open the hood and remove a brown case. The man took the case and walked into a wooded area. When the man returned a little while later, Weber noticed that he no longer had the bag. It was 3 hours later that Weber noticed 2 different men arrive in a pickup truck. They got out and looked under the hood of the Ford, and then they drove off.

Dan Smith, an investigator detective with the City of Harker Heights Police Department, said that a billfold he had lost a couple of days earlier. Appellant related that his employer had learned that appellant's billfold had been found in a building that had been burglarized, and his employer was not sure which police department had recovered it.[3] Smith testified that he had not yet learned that appellant was under suspicion for any offense, so he let him leave when the billfold could not be located.

Captain Dennis Lewis, commander of the criminal investigation division of the Killeen Police Department, testified that he was responsible for the fingerprint investigation at the pawnshop. He indicated that

they were unable to retrieve any readable latent prints from either the scene or the equipment left behind. A thorough metal detector search of the general area was not productive. After appellant was arrested and while he was being checked into jail, Lewis observed what he believed to be numerous grass stains on the bottoms of appellant's socks. Lewis ordered the socks confiscated and tested to confirm the nature of the stains.[4]

An employee of Mickey's Drive-In Grocery, Otis Hopper, stated that earlier in the week an individual had asked if he could leave his car parked on the grocery's premises. The individual explained that the clutch had gone out on the car, and that he would have the car towed later that day. Hopper testified, however, that as of 7:00 a.m. the morning of March 20, 1978, the man had not yet returned for his car.

Appellant took the stand at the guilt-innocence phase of the trial and maintained that on Thursday his car had broken down and that he had gotten permission to leave it on Mickey's parking lot. On Sunday evening, he stayed at the Silver Spur until it closed around 2:00 a.m. Upon leaving the club, he encountered an individual, whom he knew only as "Joe," and they smoked a "joint" together. Joe asked appellant to hold, or appellant was in the process of buying,[5] a "package" of five kilos of marihuana; he placed the brown case under the hood of his disabled car. Appellant then left and went to a mobile home park where he believed a friend of his lived. He located what he thought was his friend's car and fell asleep inside it. The next morning appellant was awakened by two strangers, who claimed to be the owners of the car. They informed appellant that his friend lived in a different mobile home, and was out of town for the weekend. The men

---

**3.** It appears from the record that Harker Heights is a separate political subdivision adjacent to Killeen.

**4.** Ironically, appellant had come to the stationhouse on his own to report that his wallet was missing. Clearly skeptical, Captain Lewis warned appellant and took a voluntary statement from him. Though marked as an exhibit

and identified by Lewis, the statement was not offered in evidence and does not appear in our record.

**5.** The first account was given on direct examination; the further explanation came on cross-examination.

agreed to give appellant a ride, and dropped him off at a Denny's Restaurant. It was when appellant got ready to pay for his meal at the restaurant that he realized his billfold was missing. At the close of appellant's testimony, both sides rested.

Appellant timely made his request of the trial court to include an instruction on circumstantial evidence. Such request was rejected. Then, appellant timely objected to the trial court's failure to include the circumstantial evidence charge on that aspect of law as is required by Article 36.15, V.A. C.C.P. The trial court overruled appellant's objection.

Appellant now ·contends that the trial court committed reversible error in failing to submit a circumstantial evidence charge to the jury because there was no direct evidence from any source that appellant burglarized The 429 Pawn Shop, as alleged in the State's indictment. We agree.

Generally, proof that a defendant has admitted or confessed to having burglarized a building is direct and not circumstantial evidence of the main inculpatory fact and a charge on circumstantial evidence is not required. *Richardson v. State,* 600 S.W.2d 818 (Tex.Cr.App.1980); *Ridyolph v. State,* 545 S.W.2d 784 (Tex.Cr.App.1977); *Swift v. State,* 509 S.W.2d 586 (Tex.Cr.App.1974); *Corbett v. State,* 493 S.W.2d 940 (Tex.Cr. App.1973); *Steel v. State,* 459 S.W.2d 649 (Tex.Cr.App.1970). The admission or confession must *unequivocally* admit the commission of the *very same act* charged in order to constitute direct evidence. Only in this instance is the trial court relieved of the necessity of instructing the jury on the law of circumstantial evidence where the State is relying on the admission to supply proof of the main inculpatory fact. *Ridyolph,* supra; *Hielscher v. State,* 511 S.W.2d 305 (Tex.Cr.App.1973); *Martinez v. State,* 151 Tex.Cr.R. 316, 207 S.W.2d 387 (1948).

Even if an accused admits to the commission of a crime "it must be shown by the evidence and the confession of the accused that the crime admitted is the *same* crime for which the defendant is being tried if the circumstantial evidence charge is not given. If it is only by a process of inference from the admission that it can be determined that the accused committed the offense, the court should give the circumstantial evidence charge." [6] *Ridyolph,* supra. See also *Casey v. State,* 523 S.W.2d 658 (Tex.Cr.App. 1975); *Hielscher,* supra; and *Martinez,* supra.

While it is clear in the instant case that appellant's admission is direct evidence that he participated in the commission of an offense, it is equally clear that it does not constitute direct evidence that he was guilty of the burglary of The 439 Pawn Shop. See *Casey,* supra.

Our next inquiry, then, is to consider whether the evidence in the case falls within a narrow exception to the requirement that a circumstantial evidence charge is mandatory if the main fact to be proved is established only by inferences from other facts, as announced in *Chapin v. State,* 167 Tex.Cr.R. 390, 320 S.W.2d 341 (1959).[7] The Court held in *Chapin* that when the facts established, though they be circumstances,

**6.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**7.** In *Chapin,* supra, the evidence illustrated a longstanding enmity between the accused and the deceased which ended late one night when the ill feeling was reactivated by the deceased. The accused was heard to say he "ought to kill" the deceased "or cut his throat." Thereafter, two witnesses observed the accused enter the deceased's vehicle where a fist fight ensued; however, no witness saw the accused stab the deceased. After the fight, the accused exited the vehicle and the two witnesses spoke with the deceased who responded in "a low mumbling voice similar to his usual voice when intoxicated and said that it was all right for them to go home." The deceased's body was found five hours later in his car and an autopsy established that the cause of death was two stab wounds to the chest. The accused admitted that he was angered by the deceased's calling him names, and after deceased hit him, he opened his knife and the two fell into the automobile fighting. However, the defendant denied stabbing deceased in the chest, admitting only that he "might have cut the deceased on the wrist."

stand in such relationship one to another that the *only* logical conclusion to be drawn therefrom is that the accused inflicted the fatal injury, then failure to charge on the law of circumstantial evidence does not constitute error.[8] The rationale of such a rule is obvious; what is less apparent is determining the appropriate application thereof, for circumstances though sufficient to support an inferred jury finding of guilt may nevertheless fall short of excluding *every other* reasonable hypothesis.[9] Indeed, it is in such a case that the accused's right to the submission of a circumstantial evidence instruction is crucial. See *Frazier v. State,* 576 S.W.2d 617 (Tex.Cr.App.1978); *Hielscher,* supra.

In perpetuating the correct application of these principles of law, "each case must in a measure be tested by its own facts," *Patterson v. State,* 416 S.W.2d 816, 819 (Tex.Cr. App.1967), considering the admission in light of all the other evidence. *Ales v. State,* 587 S.W.2d 686 (Tex.Cr.App.1979); *Campbell v. State,* 545 S.W.2d 791 (Tex.Cr. App.1977); *Ridyolph,* supra; *Hogan v. State,* 496 S.W.2d 594 (Tex.Cr.App.1973).

In the instant case, appellant told another that he had burglarized a pawnshop, possessed thirty six pistols and that he had made arrangements to get rid of the pistols by selling them for "around $1200.00." Other evidence disclosed that The 439 Pawn Shop was burglarized during the early morning hours of March 20, 1978. Entry into the building was made through a hole in the roof, while exit was through the back door of the pawnshop. At the entry site, officers located a pair of boots, a saw, a drill, and a chisel. A number of guns had been removed from glass display cases in the front of the building. The stolen handguns were not found.

Many of the details surrounding the actual burglary of The 439 Pawn Shop are found to be missing from appellant's declaration. Appellant's statement makes no mention of when he committed the offense, nor is a specific time mentioned. Furthermore, appellant does not give the name, location or description of the pawnshop he burglarized. And, finally, the record does not indicate one way or the other whether any other pawnshop in the area had recently lost handguns to a burglar.

No fingerprint evidence linked appellant to the scene of the burglary of The 439 Pawn Shop. Compare *Swift v. State,* 509 S.W.2d 586 (Tex.Cr.App.1974). Appellant was neither connected by any witness to the *scene of the burglary,*[10] nor to flight therefrom or any other attempt to cover his participation in the offense.[11] The State failed to establish any direct link between appellant and any fruit of the crime[12] or that any instrumentality of the crime was ultimately traced to appellant.[13]

---

8. This rule has been restated many different ways, but ultimately, it has come to be known as "the close juxtaposition rule," a rule "which basically dispenses with the necessity for a circumstantial evidence instruction where facts proven are so closely related to the main fact essential to guilt so as to be the equivalent of direct testimony." *Frazier v. State,* 576 S.W.2d 617, 619 (Tex.Cr.App.1978).

9. "There is a difference between the facts being in such a juxtaposition to warrant an inference of guilt and facts being in such a juxtaposition as to be equivalent of direct testimony. The former, no matter how strong they are or how certain is the guilt of the accused, cannot justify a failure to charge on circumstantial evidence. The latter set of facts will occur only where the evidence is such that it is logically and practically the virtual same thing as direct evidence of the *factum probandum.*" *Riggins v. State,* 468 S.W.2d 841, 846 (Tex.Cr.App. 1971).

10. Compare *Ales,* supra; *Ridyolph,* supra; *Hogan,* supra; *Steel,* supra; *Patterson,* supra; *Chapin,* supra. Compare also *King v. State,* 585 S.W.2d 720 (Tex.Cr.App.1979) in which the testimony of two witnesses connecting appellant to the scene a few minutes prior to the discovery of the theft, constituted the precise distinction in this regard between that case and the one before us.

11. Compare *Campbell,* supra; *Ridyolph,* supra; *Knight v. State,* 538 S.W.2d 101 (Tex.Cr.App. 1975); *Corbett,* supra.

12. Compare *Swift,* supra; *Corbett,* supra; *Patterson,* supra.

13. Compare *Ales,* supra; *Ridyolph,* supra; *Sloan v. State,* 515 S.W.2d 913 (Tex.Cr.App.

On appeal the State argues that appellant's admissions were sufficient to show appellant's burglary of The 439 Pawn Shop. The State's brief states in relevant part:

"The identity of the burglary is sufficiently shown by the admission that a pawn shop was burglarized *when considered with* the identity of the property taken and the finding of Appellant's billfold, driver's license, car keys and boots at the scene."

While apparently not intended as a confession of error, we are constrained to agree with this statement. See *Hielscher,* supra. The jury was indeed relegated in resolving the issue of appellant's guilt—that the burglary in which he admitted his participation was in fact the burglary of The 439 Pawn Shop—to a process of inference. We are, therefore, unable to reach the conclusion that the State's case was not one of circumstantial evidence, *Martinez,* supra, and such degree of doubt clearly dictated the submission of appellant's requested charge. *Frazier,* supra.

We hold that "where guilt must be *inferred* from circumstances in evidence, the trial court has the duty to give a charge regarding the law of circumstantial evidence, and it is not relieved of such duty by virtue of the fact that circumstances may strongly point to the accused." *Hielscher,* supra, at 308. In refusing to submit appellant's requested charge herein, the trial court committed reversible error.[14]

For the error in this regard, the judgment of conviction is reversed and this cause is remanded.

ODOM, J., dissents.
Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

On original submission of this appeal from a conviction for burglary of a building, a panel of this Court held reversal was required for failure to submit appellant's requested charge on circumstantial evidence. On rehearing, we decline to follow the original disposition of the appeal. The arguments in favor of abolishing the requirement of a circumstantial evidence charge are meritorious and we now hold that such a charge is improper. In so holding, we join the growing trend of state courts on this issue.

As noted by Judge Dally in his dissenting opinion in *Richardson v. State,* 600 S.W.2d 818 (Tex.Cr.App.1980), most federal courts refuse to charge on circumstantial evidence, and the United States Supreme Court has held that a charge similar to the one given in this state is unnecessary. The federal rule was announced in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) in the following language:

"The petitioners assail the refusal of the trial judge to instruct that where the government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect."

See also, *United States v. Clements,* 588 F.2d 1030 (5th Cir.1979); *United States v. Stokes,* 471 F.2d 1318 (5th Cir.1973); 2 C. Wright, Federal Practice and Procedure, Sec. 493, p. 319.

The following states have followed *Holland* in abolishing the requirement of a charge where the jury is properly instructed on the reasonable doubt standard: Alaska, *Allen v. State,* 420 P.2d 465 (1966); Arizona, *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970); Arkansas, *Murray v. State,* 249 Ark. 887, 462 S.W.2d 438 (1971); (But see concur-

---

1974); *Swift,* supra; *Hogan,* supra; *Chapin,* supra.

14. The Court's reversal on the failure to submit a circumstantial evidence charge obviates the need for us to address appellant's other ground of error regarding the use of prior convictions.

ring opinion in *Simmons v. State,* 255 Ark. 82, 498 S.W.2d 870); Colorado, *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1970); Delaware, *Henry v. State,* 298 A.2d 327 (1972); Hawaii, *State v. Bush,* 58 Hawaii 340, 569 P.2d 349 (1977); Iowa, *State v. O'Connell,* 275 N.W.2d 197 (1979); Kansas, *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728 (1974); Maine, *State v. Jackson,* 331 A.2d 361 (1975); Massachusetts, *Com. v. Kinney,* —— Mass.App. ——, 423 N.E.2d 1017 (1981); Minnesota, *State v. Turnipseed,* 297 N.W.2d 308 (1980); Nevada, *Vincze v. State,* 86 Nev. 546, 472 P.2d 936 (1970); New Jersey, *State v. Ray,* 43 N.J. 19, 202 A.2d 425 (1964); New Mexico, *State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977); Oklahoma, *Johnson v. State,* 632 P.2d 1231 (Okl.Cr.1981); Oregon, *State v. Draves,* 18 Or.App. 248, 524 P.2d 1225 (1974); Rhode Island, *State v. Roddy,* 401 A.2d 23 (1979); Utah, *State v. Eagle,* 611 P.2d 1211 (1980); Vermont, *State v. Derouchie,* 140 Vt. 437, 440 A.2d 146 (1981); Washington, *State v. Gosby,* 85 Wash.2d 758, 539 P.2d 680 (1975); Wyoming, *Blakely v. State,* 542 P.2d 857 (1975). See also, New York, *People v. Gonzalez,* 54 N.Y.2d 729, 442 N.Y.S.2d 980, 426 N.E.2d 474 (1981) (concurring opinion with three judges joining, citing *Holland* for proposition that adequate instruction on reasonable doubt dispenses with need for circumstantial evidence charge.); Note, the Circumstantial Evidence Charge in Texas Criminal Cases: A Retrograde Doctrine, 55 Tex.L. Rev. 1255 (1977).

■ The basis for abolishing the requirement of an instruction is that "[c]ircumstantial evidence is often as strong and conclusive upon the understanding as direct and positive evidence." *Law v. State,* 33 Tex. 37 (1870). State courts in general have recognized that circumstantial evidence may have equal if not greater weight than direct evidence. 1 Wharton's Criminal Evidence Sec. 6, p. 5. See also *Corbett v. People,* 153 Colo. 457, 387 P.2d 409, cert. denied 377 U.S. 939, 84 S.Ct. 1346, 12 L.Ed.2d 302; *State v. Schonrog,* 2 Conn.Cir. 239, 197 A.2d 546; *State v. O'Connell,* 275 N.W.2d 197; *State v. Wood,* 190 Kan. 778, 378 P.2d 536; *People v. Eckert,* 2 N.Y.2d

126, 157 N.Y.S.2d 551, 138 N.E.2d 794. Indeed, the rationale of the decision in *Holland* focused on this very point:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." (citations omitted.)

See *Holland,* 348 U.S. at 140, 75 S.Ct. at 137. To require the charge on circumstantial evidence disregards this principle by erroneously suggesting "that proof of circumstantial evidence is subject to a more rigorous standard than is proof by direct testimonial evidence." *State v. LeClair,* 425 A.2d 182 (Maine 1981). This rationale was expressed in several other state and federal court decisions where previous holdings in support of the circumstantial evidence charge were overruled.

In abolishing the charge, the Arizona Supreme Court noted in *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970), that requiring such a charge was "a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial," citing *United States v. Becker,* 62 F.2d 1007 (2nd Cir.1933). See also, *Ex parte Jefferies,* 7 Okl.Cr. 544, 124 P. 924 (1912); *State v. Gosby,* 85 Wash.2d 758, 539 P.2d 680 (1975). This principle was most persuasively expressed by Professor Wigmore:

"It can be said that there are no rules in our system of evidence, prescribing for the jury the precise effect of any general or special class of evidence. So far as logic and psychology assist us, their conclusions show that it is out of the question to make a general assertion ascribing

greater weight to one class as to the other. The probative effect of one or more pieces of either sort of evidence depends upon considerations too complex. Science can only point out that each class has its special dangers and its special advantages."

1 Wigmore on Evidence, Sec. 26, p. 401 (3d ed. 1940). See also *Galvan v. State,* 598 S.W.2d 624 (Tex.Cr.App.1979) (J. Douglas, dissenting opinion).

■ Our holding today finds further support in the fact that there is but one standard of proof for criminal convictions and where the jury is properly instructed on that standard, a charge on circumstantial evidence is valueless and invites confusion. See *Holland,* supra; *United States v. Becker,* 62 F.2d 1007 (2d Cir.1933); *State v. Costa,* 228 Kan. 308, 613 P.2d 1359 (Kan. 1980); 9 Wigmore, Evidence Sec. 2497, at 318–20 (3d ed. 1940). The constitutionally required burden of proof of criminal cases "is that the State establish all elements of the offense beyond a reasonable doubt." *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr. App.1978) (Opinion on Rehearing). See *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). By following the federal rule and the modern trend in state courts, this Court is recognizing that for purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. Rather than aiding jurors in applying the reasonable doubt standard, an additional charge on circumstantial evidence focusing on the "reasonable hypothesis" theory serves only to distract jurors from examining the proper standard of proof as the primary focus of their deliberations. Here, the jury was properly instructed on the state's burden of proof, the presumption of innocence and the requirement that an acquittal be entered if there exists a reasonable doubt as to appellant's guilt.[1]

■ The rule should be that circumstantial evidence alone may suffice only if the inferences arising therefrom prove the fact in question beyond a reasonable doubt. That is, the jury should consider the totality of the direct or circumstantial evidence and the reasonable inferences which may be drawn therefrom, in determining whether it was sufficient to establish guilt beyond a reasonable doubt. See, e.g. *Comm. v. Cooper,* 270 Pa.Super. 365, 411 A.2d 762 (Pa. 1979); *Comm. v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (Pa.1977); *Comm. v. Suggs,* 289 Pa.Super. 44, 432 A.2d 1042 (Pa.1981).[2] A

1. In *Holland,* the trial court followed local practice by giving an elaborate definition of reasonable doubt in the jury charge. Although this jurisdiction does not follow that practice, the existence of such an expansive definition is not necessarily a condition precedent to finding a charge on circumstantial evidence to be confusing and incorrect. The potential conflict between the reasonable doubt standard and the circumstantial evidence charge which can create confusion during jury deliberations is the crux of *Holland* and that confusion arises irrespective of the inclusion of a definition of reasonable doubt. The minor difference between *Holland* and the practice in this jurisdiction of not defining reasonable doubt is insignificant. Thus, the issue of whether the jury should be guided by a definition of reasonable doubt is an issue extraneous to our determination that a circumstantial evidence charge is improper. Although the Supreme Court of Missouri has interpreted *Holland* to require an elaborate definition of the reasonable doubt standard before "dispensing" with the circumstantial evidence charge, *State v. Lasley,* 583 S.W.2d 511 (Mo. 1979), we abolish the circumstantial evidence charge not because another part of the charge *dispenses* with the need for it, but because it is inherently confusing to a jury by suggesting that a different burden of proof than the reasonable doubt standard applies in circumstantial evidence cases. This inherent confusion is the point overlooked by the Missouri court.

2. Many states have relied upon this rationale in holding that the test for sufficiency of evidence on appeal is the same even where the conviction is based on circumstantial evidence. See *State v. O'Connell,* 275 N.W.2d 197, and cases cited therein. For example, in Maryland the test for sufficiency is stated in *Metz v. State,* 9 Md.App. 15, 262 A.2d 331, as follows:

"To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact could fairly be convinced beyond a reasonable doubt, of the defendant's guilt of the offense charged." The court specifically rejected the contention that the test to be applied is whether the cir-

charge which requires that the circumstances "... must exclude, to a moral certainty, every other reasonable hypothesis except the defendant's guilt ..." is a confusing and improper charge where the jury is properly instructed on the reasonable doubt standard of proof. The trial court properly refused to instruct the jury on the "reasonable hypothesis" theory. Thus, the State's motion for rehearing is granted and appellant's ground of error on this issue is overruled.

■ It now becomes necessary to address the remaining ground of error. Appellant attacks the admission of prior convictions during the guilt-innocence phase of the trial. It is contended that the procedure by which those convictions were obtained in Virginia were in violation of Texas law and that because there was no evidence before the court regarding Virginia law, it is presumed to be the same as Texas law. Appellant is attempting to collaterally attack the prior out-of-state convictions because he was fifteen at the time of commission and conviction and the record contains no certification from Juvenile Court to Adult Felony Court. He argues the convictions to be void, drawing an analogy to convictions entered where a defendant is without the aid of counsel. Appellant's argument is without merit. In this collateral attack, as with a habeas corpus proceeding, it is his burden to demonstrate that the convictions are void by showing that the procedure was improper in Virginia. In *Ex parte Rains,* 555 S.W.2d 478 (Tex.Cr.App.1977), it was noted:

"The burden of proof in a habeas corpus proceeding is upon the petitioner. It was incumbent upon the petitioner here by a preponderance of the evidence to show that he was indigent, had no counsel and did not affirmatively waive the right to counsel." (citations omitted.)

There being no evidence in support of appellant's contention, no reversible error is presented.

The State's motion for rehearing is granted; the judgment of reversal is set aside; and, the judgment is affirmed.

MILLER, Judge, concurring and dissenting.

Today the majority dispenses with the necessity of instructing the jury on the law of circumstantial evidence, a Texas legal tradition over a hundred years old, and yet continues the prohibition against instructing the jury on a definition of reasonable doubt, a Texas legal tradition over a hundred years old. The logic for the latter is cursorily explained in a footnote purporting to distinguish the *Holland* decision. *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The majority concludes in that footnote that *Holland* followed a *local* practice of giving an elaborate definition of reasonable doubt, a conclusion apparently drawn from an imaginative interpretation of footnote two in *State v. Lasley,* 583 S.W.2d 511 (Mo.1979). As will be pointed out below, this conclusion is not supported by legal research. The majority further ignores the wording in *Holland,* "But the better rule is that where the jury is *properly instructed* on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect ...," *Holland,* supra, 348 U.S. at 139–140, 75 S.Ct. at 137 (emphasis supplied), and states that the fact that Texas does not define reasonable doubt is insignificant. While I do agree that the circumstantial evidence charge is "confus-

cumstances are consistent with, or are such as to exclude every reasonable hypothesis or theory of innocence. It seems implicit that in states applying but one standard in assessing evidentiary sufficiency on appeal, an argument for submitting a varying charge to the jury on circumstantial evidence would be rejected. Thus, although we do not reach the issue of appellate review, these cases are persuasive on the issue of jury instructions. See e.g., District of Columbia, *Byrd v. United States,* 388 A.2d

1225 (1978); Maryland, *Metz v. State,* 9 Md. App. 15, 262 A.2d 331 (1970); Michigan, *People v. Nash,* 110 Mich.App. 428, 313 N.W.2d 307 (1981); Nebraska, *State v. Buchanan,* 210 Neb. 20, 312 N.W.2d 684 (1981); Pennsylvania, *Com. v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977). Compare *United States v. Kolsky,* 423 F.2d 1111 (5th Cir.1970) (no jury instruction but standard on appeal varies in circumstantial evidence cases.)

ing and improper" [1] and should be abolished, I don't agree with the majority's implied assumption that a jury is not confused by the naked and undefined term "reasonable doubt." In other words, the majority does not go far enough to clear up the confusion of which they complain.

We seem today to apply a Band-Aid approach to the ultimate issue before us; that is, the issue of what do we tell a jury when they ask, "How convinced must we be?" I submit that we should answer the question itself in such a way that a jury will be informed in both the simplest and most complete manner possible, given the inherent limits of the English language.

Presiding Judge Onion's dissent cites a long list of Texas cases that stand for the

proposition that reasonable doubt should not be defined in criminal cases. A minority of state jurisdictions agree. [2] But the United States Supreme Court, in *Holland,* supra, seems to, at the very least, sanction as correct a definition which is now contained in Devitt and Blackmar, *Federal Jury Practice and Instructions,* Section 11.-14 (3d Ed. 1977), previously Section 11.01 (2d Ed. 1970). This definition can be substantially worded as *the kind of doubt that would make a reasonable person hesitate to act in the conduct of their more serious and important personal affairs.* This concept of reasonable doubt as a jury charge has been either sanctioned or mandated in every federal courtroom in every city in forty-seven of our fifty states. [3] Perhaps the United

1. See majority opinion, ¶ 7.

2. See 36 Words & Phrases, pp. 510–512.

3. First Circuit, see *United States v. Drake,* 673 F.2d 15 (1st Cir.1982).

Second Circuit, see *United States v. Magnano,* 543 F.2d 431 (2nd Cir.1976), "This court has repeatedly expressed the desirability of *Holland's* 'hesitate to act' language and suggested its use as preferable to alternative phraseologies." *Magnano,* supra, at 436. *See, also, United States v. Joly,* 493 F.2d 672 (2nd Cir. 1974), "A reasonable doubt means a doubt sufficient to cause a prudent person to hesitate to act in the most important affairs of his or her life." *Joly,* supra, at 677, footnote 10.

Third Circuit, see *United States v. Restaino,* 369 F.2d 544, 546 (3rd Cir.1966).

Fourth Circuit, see *United States v. Burgess,* 498 F.2d 1398 United States Court of Appeals slip opinion number 73–1983 (per curiam, unpublished) (4th Cir.1974), where the jury charge read:

"A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs."

and the court stated:

"We conclude that the trial court *correctly* instructed the jury on reasonable doubt." *Burgess,* supra. (Emphasis supplied)

Fifth Circuit, see *United States v. Breedlove,* 576 F.2d 57 (5th Cir.1978); *see, also, United States v. Tobin,* 576 F.2d 687 (5th Cir.1978), which states:

"This Court criticized the 'would be willing to act' form of instruction, and urged district

courts to employ the 'would not hesitate' language in their reasonable doubt instructions. . . .

\* \* \* \* \* \*

"Despite the *clear direction* from this Court to avoid the form [willing to act] of reasonable doubt instruction, the district court refused to revise its charge to the jury." *Tobin,* supra, at 694 (Emphasis supplied)

Further for the Fifth Circuit, in *United States v. Clayton,* 643 F.2d 1071 (5th Cir.1981), the court says:

"This court has held ... that reasonable doubt is better explained as the kind of doubt that would make a reasonable person hesitate to act." *Clayton,* supra, at 1075. (Citations omitted)

Sixth Circuit, see *United States v. Bidlack,* 627 F.2d 1093 (6th Cir.1980).

Eighth Circuit, see *United States v. Wilkerson,* 691 F.2d 425 (8th Cir.1982).

Ninth Circuit, see *United States v. Miller,* 688 F.2d 652 (9th Cir.1982), which says:

"In *Robinson [U.S. v. Robinson,* 546 F.2d 309, 313–314 (9th Cir.1976), cert. denied, 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977)], we expressly approved a definition of reasonable doubt similar to that used below. We again uphold the propriety of the 'hesitate to act' language, and rule that the jury charge was adequate." *Miller,* supra, at 662.

The relevant portions of the charge are contained in the opinion at footnotes six and seven, as follows:

"[6] The jury charge on this issue was as follows:

'The presumption of innocence alone is sufficient to acquit unless the jurors are satisfied beyond a reasonable doubt of the De-

States Court of Appeals for the Tenth Circuit (from which *Holland,* supra, arose) said it best in *United States v. Leaphart,* 513 F.2d 747 (10th Cir.1975):

> The time has unquestionably arrived after *Holland, Smaldone,* and *Pepe* for the trial courts to change this [reasonable doubt] instruction and to couch it in the terms *prescribed* by the Supreme Court of the United States." (Emphasis supplied)

*Leaphart,* supra, at 750.[4]

In *Flores v. State,* 487 S.W.2d 122, 126 (Tex.Cr.App.1972), this court reiterated the proposition that "this court is not bound by decisions of lower federal courts." Not bound, to be sure, but how can we be so obstinant as to be not occasionally guided?

The majority's statement that "we join the growing trend of state courts" is misleading. As stated by the Supreme Court of Missouri, in *Lasley v. State,* 583 S.W.2d 511 (1979), cited in footnote 2 by the majority:

> "Unlike Missouri, *most* of the jurisdictions [abolishing the circumstantial evi-

dence charge] cited by respondent *permit* jury instructions to define the phrase 'reasonable doubt', most of the cases from other jurisdictions cited by the respondent indicate that some sort of elaboration on the phrase 'reasonable doubt' was made at the trial level and hedged the abrogation of the circumstantial evidence instruction with the qualification that it is not needed where the jury is *adequately instructed* on the standards for reasonable doubt." *Lasley,* supra. (Emphasis supplied) (Citations omitted)

In fact, by abandoning the circumstantial evidence charge and further declining to define reasonable doubt for a jury, we today join a very small minority of states who likewise define neither concept. We also join the Seventh Circuit, which stands alone in the face of the other ten federal circuit courts.

It is further noted that no trend to abolish the practice of defining reasonable doubt to juries is occurring, since in the last ten years not a single state which defines reasonable doubt to juries has abolished the practice.[5] Why then are we joining the

---

fendant's guilt after a careful and impartial consideration of all the evidence in the case.

'It is not required that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt.

'A reasonable doubt is a doubt based on reason and common sense. It's the kind of doubt that would make a reasonable person hesitate to act.

'Proof beyond a reasonable doubt must, therefore, be of such a convincing character that you would be willing to rely and act upon unhesitatingly in the most important of your own affairs.'

"This instruction is in substance that at 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions,* § 11.14, at 310–311 (3d Ed.1977).

"[7] The court's instruction further provided:

'There are two types of evidence on which you can properly base a verdict. One is direct evidence, that is the testimony of an eyewitness. The other is circumstantial evidence, the proof of a chain of circumstances pointing to the commission of [the] offense.

'As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires before convicting a Defendant the jury be satisfied of the

Defendant's guilt beyond a reasonable doubt from all the evidence.'

"This instruction is similar to that upheld in *U.S. v. James,* 576 F.2d 223, 227 n. 2 (9th Cir.1978)"
*United States v. Miller,* 688 F.2d 652 (9th Cir.1982).

Tenth Circuit see *Leaphart,* 513 F.2d 747 (10th Cir.1975).

Eleventh Circuit, see *United States v. Jones,* 663 F.2d 567 (11th Cir.1981).

**4.** *Holland,* supra; *U.S. v. Smaldone,* 485 F.2d 1333 (10th Cir.1973); *U.S. v. Pepe,* 501 F.2d 1142 (10th Cir.1974).

**5.** See *Rivett v. State,* 578 P.2d 946 (Alaska 1978), "doubt [which] would cause prudent men to hesitate before acting in matters of importance to themselves'". *Laird v. State,* 251 Ark. 1074, 476 S.W.2d 811 (1972); *Alvarez v. State,* 653 P.2d 1127 (Colo.1982); *State v. Conner,* 241 N.W.2d 447 (Iowa 1976); *Hockenbury v. Kentucky,* 565 S.W.2d 448 (Ky.1978) citing Palmore, *Kentucky Instructions to Juries,* § 11.01; *State v. Troiana,* 421 A.2d 41 (Me.1980); *State v. Donovan,* 120 N.H. 603, 419 A.2d 1102 (1980) "In the instant case, the trial judge instructed the jury that reasonable doubt is 'the kind of doubt that would make a reasonable person hesitate to act upon some-

small minority of jurisdictions that neither charge the jury on circumstantial evidence nor define reasonable doubt to them?

Returning to the ultimate issue before us, which is what do we tell a jury when they ask, "How convinced must we be?", I submit that in both direct and circumstantial evidence cases, when requested by either party or on the court's own motion, we should require a charge on the definition of reasonable doubt in substantial compliance (see examples in footnote three) with the "hesitate to act" standard.[6]

ONION, Presiding Judge, dissenting.

Lady Macbeth:

Why did you bring these daggers from the place?

They must lie there: go carry them, and smear

The sleepy grooms with blood.

Macbeth:

I'll go no more ....

Lady Macbeth:

Give me the daggers ...

I'll gild the faces of the grooms withal;

For it must seem their guilt.

Shakespeare, Macbeth, Act 2, scene 2.

On original submission a panel of this court reversed this cause for the refusal of the trial court to give a charge on the law of circumstantial evidence. One judge dissented without written opinion. The district attorney, who prosecuted the cause, asked in his motion for leave to file a motion for rehearing only for re-consideration of his earlier argument that such a charge was not required by the evidence in this case. The State Prosecuting Attorney, inter alia, asks this court to "wipe away" the charge from our jurisprudence. This request has recently been rejected by this court. *Richardson v. State*, 600 S.W.2d 818 (Tex.Cr.App.1980); *Galvan v. State*, 598 S.W.2d 624 (Tex.Cr.App.1979).

An examination shows the panel opinion in the instant case was in accordance with

thing of great importance to him.' This 'hesitate to act' language has received widespread approval and is generally deemed to be preferable to alternative phraseologies," *Donovan,* supra, at 1105. *State v. Naranjo,* 94 N.M. 407, 611 P.2d 1101 (1980); *Commonwealth v. Gartner,* 475 Pa. 512, 381 A.2d 114 (1977), wherein the charge read "a reasonable doubt is one that would arise and cause a reasonably careful and sensitive person such as yourself to hesitate before acting upon a matter of importance in your own affairs." And the court commented, "appellant contends that [this] sentence should have referred to 'a matter of the highest importance', however, we have specifically approved charges in virtually the exact words used by the trial court here."

**6.** We should also do more.

This definition of reasonable doubt, although better than no definition at all, becomes almost crystal clear when put in perspective with the burdens of proof of "preponderance of the evidence" and of "clear and convincing evidence." The latter two are already defined to juries in cases where applicable, but explaining all three in one voir dire would show the natural progression, in law and in fact, of the degree to which a juror must be convinced before he can decide an issue.

The law mandates that issues are decided according to "burdens of proof." The term "burden of proof" is used to define that degree of assuredness that must be reached by a jury before they may find that an issue is to be decided in favor of the party who is assigned the burden of proof. Keeping in mind that the jury is the sole judge of the credibility of evidence and of the weight to be given to evidence and must base its assuredness solely on the evidence, if the evidence fails to assure the jury to the degree required by the burden of proof, then the jury shall find the issue in question against the party who is assigned that burden of proof.

The law recognizes three distinct burdens of proof:

Proof by a *preponderance of the evidence* which is defined as that degree of proof that, when taken as a whole, shows that a fact sought to be proved is more probable than not.

Proof by *clear and convincing* evidence which is defined as that degree of proof which will produce in the jury's mind a firm belief as to the truth of the allegation sought to be established. This is an intermediate standard, falling between the preponderance of the evidence standard and the reasonable doubt standard. *State v. Addington,* 588 S.W.2d 569 (Tex.1979).

Proof *beyond a reasonable doubt* which is defined as that degree of proof that will erase in the mind of the jury the kind of doubt that would make a person hesitate to act in the conduct of their more serious and important personal affairs.

*Perspective* coupled with *definition* is the best answer to our ultimate question.

precedents prevailing for well over a century. Nevertheless, the majority seizes upon this case as a vehicle to abolish the requirement of a cautionary jury on the law of circumstantial evidence for the stated reasons that (1) it is a currently popular thing to do, and (2) the giving of the long approved circumstantial evidence charge is now somehow inherently confusing even when considered with a nondefinitional charge on reasonable doubt.

It is well settled that the distinction between the circumstantial and direct evidence and the Texas practice be first explored.

In Wharton's Criminal Evidence, 13th ed., Vol. I, § 6, p. 4, it is written:

"A distinction is drawn between direct evidence and circumstantial evidence. Evidence is direct when the witness testifies as to the facts in dispute on the basis of his own knowledge of them. Circumstantial evidence assumes a witness who has no knowledge of the facts in dispute, but knows of other facts and circumstances which, when offered in evidence, may permit the fact finder to infer that the facts in dispute existed or did not exist. The inference will be drawn if, in accordance with the common experience of mankind, a reasonable relationship may be perceived between the known facts and circumstances and the facts sought to be proved."

In *Crawford v. State,* 502 S.W.2d 768, 769 (Tex.Cr.App.1973), it was written:

"This court has for some time held that the distinction between circumstantial evidence and direct evidence is that the latter applies directly to the ultimate fact to be proved, while circumstantial evidence is the direct proof of a minor fact which, by logical inference, demonstrates the fact to be proved. *Beason v. State,* 43 Tex.Cr.R. 442, 67 S.W. 96 (1902);

*Brown v. State,* 126 Tex.Cr.R. 449, 72 S.W.2d 269 (1934); *Ramos v. State,* 478 S.W.2d 102 (Tex.Cr.App.1972) (on State's Motion for Rehearing)."

In *Brown v. State,* 126 Tex.Cr.R. 449, 453, 72 S.W.2d 269, 271 (1934), this court stated: "[C]ircumstantial evidence is direct evidence as to the facts deposed to but indirect as to the factum probandum." See also *Ramos v. State,* 478 S.W.2d 102, 105 (Tex. Cr.App.1972).

In *State v. Famber,* 358 Mo. 288, 214 S.W.2d 40, 43 (1948), the Missouri Supreme Court wrote that it had defined direct evidence as " 'evidence which if believed proves the existence of the fact in issue without inference or presumption, while circumstantial evidence is evidence, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.' "

In Note: Gaffney, The Circumstantial Evidence Charge in Texas Criminal Cases; A Retrograde Doctrine, Texas Law Review, Vol. 55, 1255, 1262, it is written:

"In effect, direct evidence constitutes a subset of evidence that triggers an immediate inference of a proposition, while circumstantial evidence represents a subset that gives rise to more attenuated inferences in that either a longer time or a longer chain of elements is necessary to complete the inference to a particular proposition."

While many courts and writers have agreed that circumstantial and direct evidence have equivalent probative value,[1] it has been said the four basic reasons for the distrust of circumstantial evidence are: (1) circumstantial evidence is inherently less accurate in proving a fact; (2) circumstantial evidence has led to gross injustices in the past; (3) people have a psychological propensity to weave theories from circum-

---

1. Texas courts have long recognized the efficacy of circumstantial evidence. *Law v. State,* 33 Tex. 37 (1870); *Berrian v. State,* 85 Tex.Cr.R. 367, 212 S.W. 509 (Tex.Cr.App.1919).

"In criminal cases, a conviction may properly be had on circumstantial evidence alone. Indeed, circumstantial evidence is frequently just

as convincing in a criminal case as direct evidence." 24 Tex.Jur.2d, Evidence, § 729, p. 403. See also Wigmore (3d ed. 1970), Evidence, §§ 24–25 at pp. 396–401.

"Some circumstantial evidence is very strong, as when you find a trout in the milk." Henry D. Thoreau, Journal, November 11, 1850.

stantial evidence and then to defend their theories because of vanity or pride; and (4) unpopular or grizzly criminal cases often lead juries to draw rash inferences in order to establish guilt. A fifth possible reason is the general public distrust of convictions by circumstances of possibly innocent individuals. See Note: Gaffney, The Circumstantial Evidence Charge in Texas Criminal Cases: A Retrograde Doctrine, Texas Law Review, Vol. 55, 1255, 1256–57.

Apparently following Lord Hale's lead,[2] Chief Justice Shaw of Massachusetts in *Commonwealth v. Webster,* 59 Mass. (5 Cush) 295 (1850), adopted for the court the requirement of a cautionary jury instruction on the law of circumstantial evidence, which soon became known as the "Webster Charge" and its use spread throughout the mid-nineteenth century United States.

*Webster* adopted two rules. The first rule related to the sufficiency of the evidence to sustain a conviction based on circumstantial evidence. The second rule logically followed the first for the jury was entitled to be informed of the law applicable to the case.[3] The second rule of *Webster* required that the jury should be specifically instructed as to the first. In 1855 the Texas Supreme Court, which then had criminal jurisdiction, in *Henderson v. State,* 14 Tex. 503, 514, adopted the first rule of *Webster* which expressed the legal formula for testing the sufficiency of circumstantial evidence which is still the test today. In *Henderson* the court quoted with approval the test from *Webster,*[4] which was and is the basis for the cautionary jury instruction on the law of circumstantial evidence. The necessity of such charge was not involved in *Henderson* and it was not there discussed.

Having established the test for determining the sufficiency of circumstantial evidence to sustain a conviction, the court made clear in cases that followed that the jury should be so charged on the subject where applicable.

In *Burrell v. State,* 18 Tex. 713 (1857), the court reversed as to the co-defendant Burns whose case rested wholly upon circumstantial evidence because the loosely worded cautionary charge on circumstantial evidence given by the court might have given the jury the confused impression that direct evidence existed. The *Burrell* court did hold the trial court did not err in refusing the requested charges on circumstantial evidence because they were not in proper form. The court made clear, however, that where the case rested wholly on circumstantial evidence the defendant was entitled "to have the law applicable to it given in charge to the jury."

In *Brown v. State,* 23 Tex. 195 (1859), the Supreme Court held that the defendant's requested charges on circumstantial evidence were taken from the commentaries of elementary authors and would have constituted a comment on the weight of evidence if given. There was no error in the court refusing to give such requested charges.

Following the effect of the earlier cases, the Court of Appeals in *Harrison v. State,* 6 Tex.App. 42 (1879), held that the trial court reversibly erred in refusing the requested charges on circumstantial evidence.

In the same year the Court of Appeals in *Hunt v. State,* 7 Tex.App. 212 (1879), reversed the case for the failure of the trial court to charge on the law of circumstantial evidence. In pertinent part the court wrote at pp. 235–236:

**2.** 2 M. Hale, Historia Placitorum Coronal.

**3.** See and cf. Article 36.14, V.A.C.C.P., and its forerunners.

**4.** "The result of the rules of law respecting the sufficiency of circumstantial evidence is very well and concisely stated by the reporter in the case of *The Commonwealth v. Webster,* before cited, thus: 'In order to warrant a conviction of a crime on circumstantial evidence each fact necessary to the conclusion sought to be established must be proved

by competent evidence beyond a reasonable doubt; all the facts' (that is, the facts necessary to the conclusion) 'must be consistent with each other and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the accused and no other person committed the offense charged.'" See also *Shultz v. State,* 13 Tex. 401 (1855).

"It is no new principle in the law of this State that to justify a conviction upon circumstantial evidence alone the facts relied on must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of guilt. *Barnes v. The State,* 41 Texas, 342; *Black v. The State,* 1 Texas Ct.App. [368] 391. If this be so, certainly a jury called to pass upon a case of that character should be informed of the rule as a part of the law applicable to the case. *An ordinary charge upon the law of reasonable doubt, copied from the statute, cannot convey to their minds a clear conception of this exaction of the law, when a conviction is sought upon circumstantial testimony alone; and without some definite rule for their guidance—a rule which will serve to impress itself on their minds, and cause them to weigh most carefully all the facts, isolated or connected, from which they must reach their conclusion by reasonable inference—they are not unlikely, in many instances, to found their verdict upon strong suspicion or mere probability, which will not suffice under the law.* Tollett v. The State, 44 Texas, 95.

"In prosecutions for ordinary felonies, juries are required to be instructed as to the law of reasonable doubt, even when the evidence is of a positive character and can lead to but one legitimate conclusion. It is much more essential, in a prosecution in which nothing is proved by positive testimony save the *corpus delicti,* that the jury be further instructed as to the conviction which must impress itself upon their minds, drawn by inference from the circumstances in evidence, before they can say that, beyond a reasonable doubt, the prisoner before them perpetrated the act. And it is believed that the adjudged cases in our State furnish no instance of a conviction for a grave felony upon circumstantial testimony alone, unless the charge of the court plainly directed the jury as to the principles of law which should govern them in reaching their conclusion; and we have

already held it error to refuse a charge of this character when asked in a proper case. *Harrison v. The State,* 6 Texas Ct.App. 42." (Emphasis supplied.)

After discussing the cases of *Burrell* and *Brown,* supra, as well as *Cave v. State,* 41 Tex. 182 (1874), and *Chester v. State,* 1 Tex.App. 702 (1877), the *Hunt* court continued at pp. 237–238:

"The usual rule in relation to circumstantial evidence, which is a familiar one to the profession, cannot be deemed a philosophic dissertation upon the nature and effect of evidence, and therefore within the prohibition of the Code as an invasion of the province of the jury, but is to be regarded rather as a rule of law applicable to all cases in which a conviction is sought upon circumstantial evidence alone, and the giving of which to a jury, in the general language usually employed, cannot specifically affect any one fact in evidence or materially prejudice the prosecution. And when given, enuring solely to the benefit of the defendant, he cannot be heard to complain. *It is only another application of the doctrine of reasonable doubt, which the humanity of the law vouchsafes to prisoners on trial, when the evidence against them is wholly circumstantial; and an instruction embodying it simply informs the jury what degree of certainty the facts in the evidence must produce in their minds before they can convict, just as a charge upon the reasonable doubt does in ordinary cases. The failure of the court to give an instruction upon this branch of the law was error which will require a reversal of the judgment.*" (Emphasis supplied.)

*Hunt* was immediately followed by such cases as *Smith v. State,* 7 Tex.App. 382 (1879); *Heath v. State,* 7 Tex.App. 464 (1879); *Struckman v. State,* 7 Tex.App. 581 (1880); *Wallace v. State,* 9 Tex.App. 299 (1880); and *Early v. State,* 9 Tex.App. 476 (1880). In *Barr v. State,* 10 Tex.App. 507 (1881), the conviction was reversed because the charge on circumstantial evidence was defective and insufficient. There the court

wrote, referring the earlier case of *Henderson:*

"In this case (Henderson) whilst it is not decided what a charge on circumstantial evidence should contain, it is apparent that in the opinion of the Supreme Court the charge in Webster's was, to say the least, an appropriate instruction on such a subject; as was held by this Court in *Hampton v. State,* 1 Texas Ct.App. 652 . . .

"It was not until decision of the case of *Hunt v. State,* 7 Tex.Ct.App. 212, that it was ever expressly decided in Texas that in trials for felony where the proof of guilt depended alone on circumstantial testimony the court should charge on that character of evidence as a part of the law of the case . . . . "

The goal in requiring a cautionary instruction on the law of circumstantial evidence was to protect the criminally accused from jury conjecture and speculation.[5]

The rules discussed above regarding the test for the determination of the sufficiency of the evidence to sustain a conviction based on circumstantial evidence and the necessity of a charge on circumstantial evidence where required have been constantly applied until today. The cases supporting these rules are legion. These rules have prevailed for over 127 years in this state as the Texas Supreme Court, the original Court of Appeals and the Court of Criminal Appeals have been courts of last resort in criminal matters. The practice under these rules have passed the muster of many appellate judges over the years.

Under this practice, the use of the charge is required only when the prosecution's case rests entirely, totally or wholly upon circumstantial evidence or relies on circumstantial evidence to prove the "main facts" of the alleged crime. *Ransonette v. State,* 550 S.W.2d 36, 43 (Tex.Cr.App.1977), and cases therein cited; *Shippy v. State,* 556 S.W.2d 246 (Tex.Cr.App.1977).

5. Instructions on the subject of circumstantial evidence should be framed as to guard the jury from basing their findings upon mere surmises.

In a Texas criminal case, the judge must charge the jury on the law of circumstantial evidence if the defendant timely objects or timely requests a charge thereon. *See Ellis v. State,* 551 S.W.2d 407 (Tex.Cr.App.1977). Compare *Mills v. State,* 508 S.W.2d 823 (Tex. Cr.App.1974). Failure of the trial judge to so charge where the defendant is entitled to such charge provides a basis for reversal. See, e.g., *Ellis v. State,* 551 S.W.2d 407 (Tex.Cr.App.1977); *Moore v. State,* 531 S.W.2d 140 (Tex.Cr.App.1976); *Farris v. State,* 496 S.W.2d 55 (Tex.Cr.App.1973).

In Texas the cautionary jury instruction on circumstantial evidence normally takes the following form:

"You are instructed that in this case the state relies on circumstantial evidence for a conviction. In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt; all the facts (that is, the facts necessary to the conclusion) must be consistent with each other and, taken together, must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged. But in such cases it is not sufficient that the circumstances coincide with, account for, and therefore render probable the guilt of the defendant. They must exclude, to a moral certainty, every other reasonable hypothesis except the defendant's guilt; and unless they do so, beyond a reasonable doubt, you will find the defendant not guilty." State Bar of Texas, Texas Criminal Pattern Jury Charges, § 0.01 (1975). See also McClung, Jury Charges for Texas Criminal Practice (1981), p. 260; 1 Branch's Anno.P.C.2d ed., § 373.1, p. 395; Morrison and Blackwell, Texas Practice, Vol. 8, Criminal Forms Anno., 8th Ed., § 82.02, p. 168.

*Myers v. State,* 6 Tex.App. 1 (1879); *Hunt v. State,* supra.

Normally the above charge is given with instructions on presumption of innocence, burden of proof, and reasonable doubt. See and cf. McClung, Jury Charges for Texas Criminal Practice, pp. 242–243. This charge usually tracks in part V.T.C.A., Penal Code, § 2.01 (1974), and Article 38.03, V.A.C.C.P. [as amended (Acts 1981, 67th Leg., p. 2247, ch. 539)]. These statutes are now identical and read:

"All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial."

The term "reasonable doubt" is not normally defined in a Texas criminal case. A host of cases hold that it should not be defined. See, e.g., *Massey v. State,* 1 Tex. App. 563, 570 (Ct. of Appeals 1877); *Fury v. State,* 8 Tex.App. 471 (1880); *McPhail v. State,* 9 Tex.App. 164 (1880); *Cohea v. State,* 9 Tex.App. 173 (1880); *Schultz v. State,* 20 Tex.App. 315 (1886); *Johnson v. State,* 27 Tex.App. 163, 11 S.W. 106 (1889); *Lenert v. State,* 63 S.W. 563 (Tex.Cr.App.1901); *Holmes v. State,* 68 Tex.Cr.R. 17, 150 S.W. 926 (Tex.Cr.App. 1912); *Sanchez v. State,* 69 Tex.Cr.R. 1134, 153 S.W. 1133 (Tex.Cr.App.1913); *Marshall v. State,* 76 Tex.Cr.R. 386, 175 S.W. 154 (Tex.Cr.App.1915); *Bennett v. State,* 91 Tex.Cr.R. 422, 239 S.W. 951 (Tex.Cr.App. 1922); *Sagu v. State,* 94 Tex.Cr.R. 14, 248 S.W. 390 (Tex.Cr.App.1923); *Gallegos v. State,* 152 Tex.Cr.R. 508, 215 S.W.2d 344 (Tex.Cr.App.1949); *Pierce v. State,* 159 Tex. Cr.R. 504, 265 S.W.2d 601 (Tex.Cr.App. 1954); *Pigg v. State,* 162 Tex.Cr.R. 521, 287 S.W.2d 673 (Tex.Cr.App.1956). Cf. *Whitson v. State,* 495 S.W.2d 944 (Tex.Cr.App.1973). Thus in Texas only a nondefinitional charge on "reasonable doubt" is normally given in a criminal case.

And early on it was held that the omission to charge on the law of circumstantial evidence is not cured by the *ordinary* charge on reasonable doubt. *Hunt v. State,* 7 Tex.App. 212, 235–236 (1879); *Wallace v. State,* 7 Tex.App. 570, 574 (1880); *Struckman v. State,* 7 Tex.App. 581, 582 (1880).

Under this practice also, after a conviction, every circumstantial evidence case must necessarily be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Earnhart v. State,* 575 S.W.2d 551, 554 (Tex.Cr.App. 1979); *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977); *Moore v. State,* 532 S.W.2d 333 (Tex.Cr.App.1976); *Higgins v. State,* 515 S.W.2d 268 (Tex.Cr.App.1974); *Indo v. State,* 502 S.W.2d 166 (Tex.Cr.App. 1973). A conviction on circumstantial evidence, however, cannot be sustained if the circumstances proved do not exclude every other reasonable hypothesis except that of the guilt of the accused and proof amounting to only strong suspicion or mere probability is insufficient. *Flores v. State,* 489 S.W.2d 901 (Tex.Cr.App.1973); *Kinkle v. State,* 474 S.W.2d 704 (Tex.Cr.App.1972); *Culmore v. State,* 447 S.W.2d 915 (Tex.Cr. App.1969); *Brock v. State,* 162 Tex.Cr.R. 339, 285 S.W.2d 745 (Tex.Cr.App.1956).[6]

---

**6.** As to the matter of appellate review on convictions based on circumstantial evidence, this court in *Ysasaga v. State,* 444 S.W.2d 305, 308–309 (Tex.Cr.App.1969), wrote:

"Ordinarily the test on appeal is whether there was evidence from which the jury (advised of the restrictions which the law places upon them in condemning one on circumstantial evidence) might reasonably conclude that every reasonable hypothesis other than guilt was excluded.

" 'In criminal cases, a judgment of conviction, to be sustained on appeal, must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

" 'In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The Court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not

With this background, a review of the majority's action is in order.

Professing admiration for and embracing the 28-year-old *Holland,* the members of the majority display by their words they do not understand the object of their affection. They never even explain why this court has never before been lured by *Holland's* charms.

*Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), involved a federal prosecution for income tax evasion. There the Supreme Court wrote:

> "Petitioners press upon us, finally, the contention that the instructions of the trial court were so erroneous and misleading as to constitute grounds for reversal. We have carefully reviewed the instructions and cannot agree. But some require comment. The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, *Garst v. United States,* 4 Cir., 180 F. 339, 343; *Anderson v. United States,* 5 Cir., 30 F.2d 485–487; *Stutz v. United States,* 5 Cir. 47 F.2d 1029, 1030; *Hanson v. United States,* 6 Cir., 208 F.2d 914, 916, *but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, United States v. Austin-Bagley Corp.,* 2 Cir., 31 F.2d 229, 234, certiorari denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002; *United States v. Becker,* 2 Cir., 62 F.2d 1007, 1010; 1 Wigmore, Evidence (3d ed.), §§ 25–26.

> "Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

> "Even more insistent is the petitioners' attack, not made below, on the charge of the trial judge as to reasonable doubt. He defined it as 'the kind of doubt ... which you folks in the more serious and important affairs of your own lives might be willing to act upon.' We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, see *Bishop v. United States,* 71 App.D.C. 132, 107 F.2d 297, 303, rather than the kind on which he would be willing to act. But we believe that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some. A definition of a doubt as something the jury would act upon would seem to create confusion rather than misapprehension. 'Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury,' *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481, and we feel that, taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." (Emphasis supplied.)

---

sufficiently establish all material elements of the offense charged.' 24 Tex.Jur.2d, Evidence, Sec. 742, p. 422."
*Suff v. State,* 531 S.W.2d 814 (Tex.Cr.App. 1976); *Davis v. State,* 516 S.W.2d 157 (Tex.Cr. App.1974); *Earnhart v. State,* supra; *Stogsdill v. State,* supra; *Hollingsworth v. State,* 419 S.W.2d 854 (Tex.Cr.App.1967); *King v. State,* 396 S.W.2d 409 (Tex.Cr.App.1965); *Ramirez v. State,* 163 Tex.Cr.R. 109, 289 S.W.2d 251 (Tex. Cr.App.1956).

In 5 Am.Jur.2d, Appeal and Error, § 821, p. 262, it is written:

"... And it has been held that where a conviction rests solely on circumstantial evidence, and there is substantial evidence supporting the finding of guilt, this finding may nevertheless be reviewed by the appellate court as to whether that circumstantial evidence was equally compatible with an assumption of innocence of the accused."

It is obvious that the holding in *Holland* was not of federal constitutional dimension and was not binding in any way on the states, which is evidenced by the fact that Texas has for 28 years chosen not to follow such federal holding.

The *Holland* holding made clear that an additional cautionary charge on the law of circumstantial law (that it must be such as to exclude every reasonable hypothesis other than that of guilt) need not be given "where the jury is properly instructed on the standards for reasonable doubt." The omission of the former is permissible only where the latter is properly given.

In *Holland,* itself, as earlier observed, the trial court defined "reasonable doubt" as the kind of doubt on which a juror would be willing to act. The Supreme Court did not approve this standard but thought the term should have been defined as the kind of doubt that would make a person hesitate to act. Nevertheless, the Court felt the instructions taken as a whole correctly conveyed the concept of reasonable doubt to the jury. Thus, the court found the standard for reasonable doubt satisfactory under the circumstances.

The presumption underlying the *Holland* doctrine is that an adequate instruction on the standard for reasonable doubt fulfills the function of the cautionary instruction on the law of circumstantial evidence and results in possibly less jury confusion in evaluating direct and circumstantial evidence. The essence of the *Holland* doctrine, of course, is that the probative value of direct and circumstantial evidence is not to be distinguished.

In Law and Water Law Review, Vol. XI, pp. 623–632, Note [Evidence—Abrogating The Cautionary Instruction In Criminal Prosecutions, Relying Substantially On Circumstantial Evidence, *Blakely v. State,* 542 P.2d 857 (Wyo.1975) 1976], it was written:

"The Holland Court specifically approved the use of three instructions. The burden of proof instruction is used to fulfill the same policy as it promoted in the pre-Blakely era in Wyoming. The Court approved a reasonable doubt instruction that not only set the standard of evaluation for purposes of conviction, but also elaborated on the meaning of the term 'reasonable doubt.' The function of this instruction was both to guide the jury's evaluation of the evidence and to provide an insight into the meaning of the standard, the goal being to limit jury speculation. Finally, the Court provided the groundwork for an instruction specifically equating the probative value of direct and circumstantial evidence. The function of this new Holland instruction was to ensure that circumstantial evidence was not relegated to an inferior status." [7]

There are four instructions to be kept in mind with any discussion of the *Holland* doctrine. They are: (1) the presumption of innocence and burden of proof charge; (2) the reasonable doubt charge; (3) cautionary charge regarding circumstantial evidence; and (4) the *Holland* instruction discussed above (footnote # 7).

In Land and Water Law Review, supra, at pp. 628–629, it was also stated:

"A jurisdiction adopting the Holland doctrine ought to heed the Supreme Court's expressed concern for the unrestricted application of the *Holland* rule. The Court recognized that the dangers inherent in criminal prosecutions founded solely on circumstantial evidence are not to be lightly considered. The Court sug-

---

**7.** The *Holland* instruction for which the *Holland* decision laid the predicate is similar to the following:

"There are two types of evidence from which you may find the truth as to the facts of a case—direct and circumstantial evidence ... Circumstantial evidence is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence ... After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty."

1 Devitt and Blackmar, Federal Jury Instructions, § 11.02 (Supp.1975).

gested a number of safeguard instructions to be used in conjunction with the Holland instruction as alternatives to the cautionary instruction. The practice of other jurisdictions that have adopted Holland is essentially a function of how these safeguards are utilized at the trial level.

"One practice under the Holland standard allows full definitional explanation of the reasonable doubt standard. State courts practicing under Holland have expressed nearly universal concern as to the adequacy of the reasonable doubt instruction which is used to replace the cautionary instruction on circumstantial evidence. *Upon abrogating the cautionary instruction, both federal and state courts have been very careful to ensure that the reasonable doubt standard is fully developed within the context of instructions.* This practice, using the burden of proof instruction, the Holland instruction, and a fully definitional reasonable doubt instruction, is consistent with the recognized policy under Holland of providing maximum protection of an accused from potential jury speculation and conjecture, *since the reasonable doubt instruction is expanded to fulfill the function of the cautionary instruction.*" (Emphasis supplied.)

It is interesting to examine some of the state cases cited by the majority as following *Holland* in abolishing the necessity for a charge on circumstantial evidence "*where the jury is properly instructed on the reasonable standard.*"

In *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728 (Kan.S.Ct.1974), proof of the defendant's guilt was based almost entirely on circumstantial or indirect evidence. On appeal the defendant complained the trial court refused to give the "reasonable hypothesis" charge on circumstantial evidence. In rejecting the contention, the court noted the charge which was given on presumption of innocence, burden of proof and reasonable doubt as follows:

"Instruction No. 2. The law places the burden upon the State to prove the defendant is guilty. The law does not re-

quire the defendant to prove his innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced from all the evidence in the case that he is guilty.

"You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions. The test you must use is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant not guilty. If you have no reasonable doubt as to the truth of any of them, you should find the defendant guilty. *A reasonable doubt is such a doubt that will leave a juror's mind in such a condition that one cannot say that he or she has been convinced to a moral certainty of the defendant's guilt.*

"A reasonable doubt, if there is one, must arise after a careful consideration of all the evidence and it must arise out of the evidence, or lack of evidence, admitted in the trial of the case." (Emphasis supplied.)

The Kansas Supreme Court in *Wilkins* in speaking of the charge said:

"It properly and adequately states the law and provides the jury with a correct standard for the determination of the guilt or innocence of the accused no matter what class of evidence has been offered at trial ...

"In the instant case the jury was properly instructed that if it had a reasonable doubt as to defendant's guilt then it should find him not guilty. *The 'reasonable doubt' instruction which was used has the same meaning as the 'reasonable theory of innocence' instruction which defendant requested.*" (Emphasis supplied.)

In *State v. Draves,* 18 Or.App. 248, 524 P.2d 1225 (Or.App.1974), the defendant complained of the trial court's failure to give a circumstantial evidence charge using the "any theory of innocence" language. The appellate court rejected the complaint because (1) there was direct evidence and a

circumstantial charge was not necessary, and (2) because of the charge on reasonable doubt, etc. The trial court gave the *Holland* inspired type of instruction [8] and in addition gave a charge on the presumption of innocence, burden of proof, and on reasonable doubt as follows:

"The burden is upon the state to prove the guilt of the defendant beyond a reasonable doubt. *Reasonable doubt means an honest uncertainty as to the guilt of the defendant. A reasonable doubt exists when, after a careful and impartial consideration of all of the evidence in the case, you do not feel convinced to a moral certainty that the defendant is guilty.*

"*Proof beyond a reasonable doubt is such as you would be willing to act upon in the most important of your own affairs.* The law presumes that the defendant is innocent, and this presumption follows the defendant until guilt is proved beyond a reasonable doubt." (Emphasis supplied.)

It is observed that both in *Wilkins* and *Draves* the trial court gave full definitional charges on reasonable doubt and, in addition, *Draves* gave the so-called *Holland* instruction.

In several other state cases cited by the majority the reasonable doubt charges were not quoted in the opinions but it was indicated that the instructions gave a proper charge on the reasonable doubt *standard.*

In *Commonwealth v. Kinney,* —— Mass. App. ——, 423 N.E.2d 1017 (Mass.App.1981), the court said there was no error in failing to give the circumstantial evidence charge "where the court's charge on reasonable doubt could not be faulted and where court further charged on matter of inferences

...." *State v. Turnipseed,* 297 N.W.2d 308 (Minn.1980), held that where the jury was properly instructed on the *standards* of reasonable doubt and instructions on circumstantial evidence was otherwise adequate, omission of phrase "all circumstances must be proved consistent with that conclusion and inconsistent with any other rational conclusion" was not error. In *Vincze v. State,* 86 Nev. 546, 472 P.2d 936 (Nev.1970), it was held that where the jury was properly instructed on the *standards* of reasonable doubt there was no error in refusing to give charge on circumstantial evidence. See also *State v. Roddy,* 401 A.2d 23 (R.I.1979). *Allen v. State,* 420 P.2d 465 (Alaska 1966); *State v. Eagle,* 611 P.2d 1211 (Utah 1980).

In *State v. Ray,* 43 N.J. 19, 202 A.2d 425 (N.J.1964), the trial court gave a charge on circumstantial evidence but it did not include a statement that the evidence must exclude every reasonable hypothesis of innocence. The court observed a proper charge on reasonable doubt was given and a *Holland* instruction that the test in weighing circumstantial and direct evidence is the same was also given. The appellate court found no error in the charge for failure to include the requested statement on circumstantial evidence.

It does not appear that in any of the cases mentioned above that a nondefinitional reasonable doubt instruction was used or considered as giving a proper legal standard on reasonable doubt.

In only *Johnson v. State,* 632 P.2d 1231 (Okl.Cr.App.1981), and *Blakely v. State,* 542 P.2d 857 (Wyo.1975), which followed *Holland* and were cited by the majority does it appear that a nondefinitional reasonable doubt instruction was used or approved.[9]

---

8. "Now, there are two types of evidence in this case upon which the State may rely. One is direct evidence, such as the testimony of an eyewitness. The other is circumstantial evidence. That is the proof of a chain of circumstances pointing to the commission of the offense. The proof may be either type or a combination of both. In any event, you may not find the defendant guilty unless all the evidence taken together leaves you satisfied of his guilt beyond a reasonable doubt."

9. In *Blakely* the feloniously misbranding of livestock conviction was founded substantially upon circumstantial evidence. The trial court gave a cautionary charge on circumstantial evidence. On appeal the defendant complained, inter alia, that the trial court erred in refusing to include in the said cautionary instruction "to the exclusion of all others." The Wyoming Supreme Court affirmed the conviction indicating the cautionary instruction was consistent

Neither court came to grips with the question of how in eliminating a cautionary instruction on circumstantial evidence and utilizing only a nondefinitional reasonable doubt instruction the accused is protected from jury speculation. The *Blakely* opinion is roundly criticized in Land and Water Law Review, Vol. XI, p. 623, supra, on this score.

As has been seen, one practice under the *Holland* doctrine allows a full definitional explanation of the reasonable doubt standard. When abrogating the cautionary instruction on circumstantial evidence, most federal and state courts have been very careful to see that the reasonable doubt standard is fully developed within the context of the court's jury charge so as to afford protection of the accused from possible jury conjecture and speculation. This is true because the reasonable doubt instruction must under the practice now serve to fulfill the function of the cautionary instruction on circumstantial evidence.

Another approach is that adopted by California. California Jury Instructions—Criminal, §§ 2.00–2.01 (1970). This approach is simply to hold that the *Holland* rationale as to the equality of direct and circumstantial evidence in terms of probative value is not inconsistent with giving the cautionary instruction on circumstantial evidence. Four jury instructions are given under this approach: the burden of proof instruction, the nondefinitional reasonable doubt instruction, the cautionary instruction on circumstantial evidence, and the *Holland* instruction.

Many states have recognized that the *Holland* decision is a federal holding not constitutionally mandated. They have continued to utilize their cautionary circumstantial evidence in a sense of fairness to avoid jury speculation, without any mention

of *Holland.* This is, of course, what Texas has done for 28 years since *Holland* until today.

In *State v. Lasley,* 583 S.W.2d 511 (Mo. 1979), the Missouri Supreme Court came to grips with the question in a burglary case. The issue presented was whether the court erred in giving the MAI–Cr. 3.42 circumstantial evidence charge which includes the "reasonable hypothesis" instruction in a case where the evidence is wholly circumstantial and the defendant properly requests the charge. The State sought to have the court abrogate MAI–Cr. 3.42 and adopt the federal rule of *Holland.* After discussing the *Holland* opinion by Mr. Justice Clark, the Missouri court wrote:

"Mr. Justice Clark required as a condition precedent to dispensing with the reasonable hypothesis instruction that the jury be properly instructed on the standards for reasonable doubt. It is this condition precedent which causes the problem for Missouri courts. The law in Missouri is well-settled that a judge may not comment upon the phrase 'reasonable doubt' and the notes on the use of MAI–Cr 2.20 forbid a trial judge from giving any other instruction that elaborates on, or attempts to define, 'reasonable doubt.' *State v. Amerson,* 518 S.W.2d 29, 32 (Mo. 1975); *State v. Taylor,* 486 S.W.2d 239, 244 (Mo.1972); *State v. Lafferty,* 416 S.W.2d 157, 161 (Mo.1967).

"Respondent seeks to harmonize the requirement of *Holland* and existing Missouri law. Respondent's Supplemental Brief at 11 states that 'the overwhelming majority of jurisdictions when confronted with the issue [whether the reasonable hypothesis' instruction should be abrogated] have decided to excise the "reasonable hypothesis" instruction.' Unlike Missouri, most of the jurisdictions cited by re-

---

with prior standards. The Court went further, however, and held that a cautionary instruction regarding circumstantial evidence is unnecessary, tends to confuse the jury, and is not to be used any longer. A long line of Wyoming cases sanctioning the instruction was overruled.

In the course of the *Blakely* opinion the court reaffirmed *Cosco v. State,* 521 P.2d 1345 (Wyo. 1974), holding that the term "reasonable doubt" is self-explanatory and that any attempt to elaborate on the meaning of the term is likely to produce jury confusion, resulting in reversible error. See also *Bentley v. State,* 502 P.2d 203, 206 (Wyo.1972).

spondent permit jury instructions to define the phrase 'reasonable doubt.' Most of the cases from other jurisdictions cited by the respondent indicate that some sort of elaboration on the phrase 'reasonable doubt' was made at the trial level, and hedge the abrogation of the circumstantial evidence instruction with the qualification that it is not needed where the jury is adequately instructed on the standards for reasonable doubt. *State v. Gosby,* 85 Wash.2d 758, 539 P.2d 680, 684, 686 (banc 1975); *State v. Jackson,* 331 A.2d 361, 365 (Me.1975); *State v. Draves,* 18 Or.App. 248, 524 P.2d 1225, 1227 n. 1 (1974); *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728, 735 (1974); *Murray v. State,* 249 Ark. 887, 462 S.W.2d 438, 442–43 (1971); *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841, 846 (banc 1970); *Allen v. State,* 420 P.2d 465, 468 (Alaska 1966). See also *Henry v. State,* 298 A.2d 327, 330 (Del.1972); *Vincze v. State,* 86 Nev. 546, 472 P.2d 936, 938 (1970); *State v. Fiorello,* 36 N.J. 80, 88 n. 1, 174 A.2d 900, 904 n. 1 (1961), cert. denied 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962). The majority of states currently use a circumstantial evidence instruction, including twelve jurisdictions in which, within the last decade, the state supreme court has reaffirmed its use. *State v. Graven,* 54 Ohio St.2d 114, 374 N.E.2d 1370, 1373 (1978); *State v. Shank,* 88 S.D. 645, 226 N.W.2d 384, 386 (1975); *State v. Langston,* 265 S.C. 74, 216 S.E.2d 875, 876 (1975); *State v. Goodrick,* 95 Idaho 773, 519 P.2d 958, 961 (1974); *State v. Bratcher* [157 W.Va. 918], 206 S.E.2d 408, 410 (W.Va.1974); *Bunch v. State,* 499 S.W.2d 1, 3 (Tenn.1973); *Zdiarstek v. State,* 53 Wis.2d 420, 192 N.W.2d 833, 837 (1972); *State v. Champagne,* 198 N.W.2d 218, 229 (N.D.1972); *Johnson v. State,* 258 Ind. 683, 284 N.E.2d 517, 519 (1972); *State v. Anderson,* 270 So.2d 353, 357 (Fla.1972); *State v. Lemieux,* 160 Conn. 519, 280 A.2d 874, 875 (1971); *Barrett v. State,* 253 So.2d 806, 809 (Miss.1971).

"Respondent relies heavily on the case of *Blakely v. State,* 542 P.2d 857 (Wyo. 1975). In *Blakely,* the appellant was charged with feloniously misbranding livestock and was found guilty by a jury. The conviction was based entirely upon circumstantial evidence. The defendant alleged that the trial court erred in refusing to add the phrase 'to the exclusion of all others' to the cautionary instruction on circumstantial evidence. The instruction that was given to the jury read as follows:

"In this case the State is relying solely on circumstantial evidence and you are instructed it is a well-established rule of law that, where circumstantial evidence alone is relied upon, the circumstances when considered together must point clearly and conclusively to the guilt of Howard Blakely and exclude every reasonable hypothesis other than that of guilt.

Id. at 861. The Wyoming Supreme Court stated that the circumstantial evidence instruction given by the trial court was consistent with prior Wyoming Supreme Court decisions. The court then overruled the prior Wyoming decisions that required the reasonable hypothesis instruction in cases involving circumstantial evidence, criticizing the instruction as 'wishy-washy, misleading and constantly raising questions.' Id. at 862.

"We are not persuaded by the approach adopted in *Blakely.* The Wyoming Supreme Court ignored the suggestion in *Holland,* also present in the cases from other jurisdictions adopting the rule in *Holland,* that it is only appropriate to dispense with the reasonable hypothesis instruction in a case involving circumstantial evidence 'where the jury is properly instructed on the standards for reasonable doubt.' 348 U.S. at 139, 75 S.Ct. at 137. *Where no instruction on the standards for reasonable doubt is permitted, we do not think that it is appropriate to leave the jury without the guidance of a reasonable hypothesis instruction.*

"Respondent contends that MAI–Cr 3.42 tends to relegate circumstantial evidence to an inferior status by distinguishing direct evidence from circumstantial

evidence. This contention fundamentally misconstrues the purpose and function of MAI–Cr 3.42. We acknowledge, and it is now generally recognized, that circumstantial evidence is not inherently of less probative value than direct evidence. *To say the two types of evidence are equal in weight, however, is not to say that they are equal in all respects.* The distinction between the two types of evidence remains useful. This court has defined direct evidence as ' "evidence which if believed proves the existence of the fact in issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." ' *State v. Famber,* 358 Mo. 288, 214 S.W.2d 40, 43 (1948). The distinction is not cast in terms of the weight to be accorded each type of evidence, but in terms of the pattern of logical inference which must be employed in reasoning from circumstantial evidence. We think this difference warrants the continued use of MAI–Cr 3.42. *Because circumstantial evidence requires jurors to use an inferential process to determine an ultimate fact, it is appropriate to caution them to make certain that their inferences are reasonable, consistent with the guilt of the defendant and inconsistent with any reasonable theory of his innocence.*

"In reasoning from circumstantial evidence to the existence of a fact in issue, a juror is called upon to supply a missing premise from his own experience. In the instant case, for example, the jury is asked to infer, from the facts that a house was burglarized on the morning of May 26, 1976, that the appellant was seen in the driveway of the house that same morning and that shortly afterward the appellant was driving a van in which items taken from the house were found, the conclusion that the appellant himself committed burglary. The jurors must supply from their own experience the major premise of the syllogism: 'If a person is found in the vicinity of a burglarized house near the time of the burglary and in possession of items taken in the burglary, then that person has committed burglary.' The prosecution is not required to produce empirical studies demonstrating the reliability of such a generalization. The only protection a criminal defendant has against inferences drawn from a doubtful major premise is the assurance that the jury will subject the suppressed premise to the reasonable doubt standard of proof. Our requirement that an inference of guilt be inconsistent with any reasonable *theory* of innocence forces the jury to subject the major premise used in drawing the inference to the same reasonable doubt scrutiny to which it subjects all the other evidence presented at trial. We think that the additional guidance offered a jury by MAI–Cr 3.42 is necessary to protect a defendant from juror speculation. This instruction does not conflict with MAI–Cr 2.20, because it does not attempt to define the reasonable doubt standard. *Neither does the instruction invoke a different or higher standard of proof for circumstantial evidence than for direct evidence. It merely instructs the jury to apply the reasonable doubt standard to each phase of the inferential process involved in drawing conclusions from circumstantial evidence. Far from being inconsistent with the rule forbidding the futile attempt to define 'reasonable doubt,' the circumstantial evidence instruction is needed precisely because Missouri practice forbids defining reasonable doubt.* The failure to give MAI–Cr 3.42 in this case constituted error...." (Emphasis supplied.) (Footnotes omitted.) [10]

The majority in the instant case seeks to justify its position by saying that in *Holland* the federal district court followed "local practice" in giving a definitional charge on reasonable doubt. Nothing in the *Holland* opinion or elsewhere supports such assertion and no authority is, of

---

**10.** See also *Newsome v. State,* 355 So.2d 483 (Fla.App.Dist. 2 1978).

course, cited. It is clear from what has been written earlier that in many state courts, Wharton's Criminal Evidence, 13 ed., Vol. I, § 12, p. 18, and in many federal courts, Wright, Federal Practice and Procedure, Criminal 2nd, Vol. II, § 500, p. 805, that the giving of a definitional reasonable doubt instruction is quite common.[11] There is nothing to show that the giving of such charge was only "local" practice in the United States District Court for the District of Colorado where the *Holland* case was tried over 28 years ago.

The majority faults the Missouri Supreme Court in *State v. Lasley,* supra, for interpreting *Holland* as requiring a definitional reasonable doubt charge or standard before dispensing with a circumstantial evidence charge and goes on to say "... we abolish the circumstantial evidence charge not because another part of the charge dispenses with the need for it, but because it is inherently confusing to a jury by suggesting that a different burden of proof than the reasonable doubt standard applies in circumstantial evidence cases."

The majority fails to set out and explain how the conventionally given Texas cautionary charge on circumstantial evidence and the normally given nondefinitional charge on reasonable doubt suggests different burdens of proof or how they are "inherently confusing." Despite the lack of explanation, the majority accuses the Missouri court of overlooking the "inherent confusion."[12] It is the majority that is confused. In *Holland* the Supreme Court talked of the possible confusion between the charge on circumstantial evidence and a *definitional* charge on reasonable doubt. The Court did not state that a cautionary charge on the law of circumstantial evidence standing alone was confusing, or was confusing when considered with a nondefinitional charge on reasonable doubt. The majority's interpretation of Holland is off base.

Thus 127 years after the basis for the cautionary circumstantial evidence charge was approved, *Henderson v. State,* 14 Tex. 503, 514 (1855), and 28 years after the federal case upon which the majority relies, it is decided that the circumstantial evidence charge and the instruction on nondefinitional reasonable doubt are inherently confusing. There is no basis for such a holding.

---

**11.** Pattern Jury Instructions, Criminal Cases, U.S. Fifth Circuit, District Judges Association, Instruction 3A (Presumption of Innocence, Burden of Proof, Reasonable Doubt) reads:

"The indictment or formal charge against a Defendant is not evidence of guilt. Indeed, the Defendant is presumed by the law to be innocent. The law does not require a Defendant to prove his innocence or produce any evidence at all. The Government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so you must acquit him.

"Thus, while the Government's burden of proof is a strict or heavy burden, it is not necessary that the Defendant's guilt be proved beyond all possible doubt. It is only required that the Government's proof exclude any 'reasonable doubt' concerning the Defendant's guilt.

"A 'reasonable doubt' is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

"Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. If you are convinced that the accused has been proved guilty beyond reasonable doubt, say so. If you are not convinced, say so."

See and cf. *United States v. Richardson,* 504 F.2d 357 (5th Cir.1974).

**12.** In Wharton's Criminal Evidence, 13d ed., Vol. I, § 12, pp. 18–19, it is written:

"In some states, particularly where the only evidence is circumstantial, it has been stated that proof beyond a reasonable doubt must exclude every reasonable or rational hypothesis other than guilt. *This instruction should not be regarded as establishing a standard more severe than the usual concept of reasonable doubt.*" (Emphasis supplied.)

In speaking of a charge on circumstantial evidence, the Court of Appeals in *Hunt v. State,* 7 Tex.App. 212 (1879), stated:

"*It is only another application of the doctrine of reasonable doubt, which the humanity of the law vouchsafes to prisoners on trial, when the evidence against them is wholly circumstantial; and an instruction embodying it simply informs the jury what degree of certainty the facts in the evidence must produce in their minds before they can convict, just as a charge upon the reasonable doubt does in ordinary cases.*" (Emphasis supplied.)

Texas courts have long recognized the need to protect the accused in a criminal prosecution from jury conjecture and speculation. The majority, without hearing arguments or requiring briefs as to the desirability of abolishing the circumstantial evidence rule, of adopting the Holland rule or as to adequate safeguards that should accompany such action, have abolished the requirement of any charge on circumstantial evidence abrogating the controls on jury conjecture that has been previously utilized in Texas to insure fairness in our criminal trials.

In addition to "inherent confusion," the majority seeks support for its decision by urging that it is the currently popular thing to do, that most jurisdictions now have abolished the circumstantial evidence charge. This if, of course, not necessarily so as we have seen, nor should it be the basis for the change the majority seeks to wrought. Should we abolish our community property laws because a majority of the states do not have such laws? Should we change any of our laws or precedents because like the lyrics in the old song "Turkey Trot," "Everybody's doing it"? Texas, of all states, has never considered its rules deficient, faulty, lacking reason, etc., merely because it was not among the majority of the states with regard to the particular rule, nor should it today.

Now that the majority abolishes the requirement for the cautionary charge on the law of circumstantial evidence, what is to be the legal formula for testing the sufficiency of the evidence in a case based wholly on circumstantial evidence? Is it to remain the same test approved by the Supreme Court of Texas in 1855 in *Henderson* and followed consistently since that time? See footnote # 4. The majority does not tell us, and with a studied stubborness, chooses to ignore the question. If the test is to remain the same, then the jury is entitled to a charge on the law of circum-

stantial evidence as has been given in the past. See Article 36.14, V.A.C.C.P.[13] It would be the height of absurdity to keep the jury in the dark about the requirements of the law regarding the sufficiency of circumstantial evidence and then apply the test required by law to any guilty verdict rendered. If the test is to be changed, now is the time to do it, not later after much confusion as to what test is to be applied. If there is to be a new and different test, it should be clearly delineated, the reasons for its adoption set forth, as well as the reasons for the demise of the former rule. It should be remembered that not only will the appellate courts be dealing with sufficiency questions, but so will the trial courts when passing on motions for instructed verdicts and motions for new trials. Guidelines are needed now in an area which has been churned by today's decision. The majority owes this much to the bench and the bar, and if you, please, the people of Texas.

I join Judge Clinton in expressing concern and indeed alarm at the course which the majority is chartering, particularly in light of *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1982) (Opinion on State's Motion for Rehearing), and *Faulder v. Hill,* 612 S.W.2d 512 (Tex.Cr.App.1981).

For the reasons stated, I vigorously dissent.

CLINTON, Judge, dissenting.

More than one hundred years ago judges of the former court of appeals were uniformly holding that an omission to charge on circumstantial evidence is not cured by the ordinary charge on reasonable doubt. *Hunt v. State,* 7 Tex.App. 212, 235–236 (Ct. App.1879); *Wallace v. State,* 7 Tex.App. 570, 574 (Ct.App.1880); *Struckman v. State,* 7 Tex.App. 581, 582 (Ct.App.1880). I am not persuaded that what the majority today sees as a trend of conventional wisdom on

---

**13.** Article 36.14, supra, provides in part:
"Subject to the provisions of Article 36.07 in each felony case and in each misdemeanor case tried in a court of record, *the judge shall,* before the argument begins, *deliver to*

*the jury,* except in pleas of guilty where a jury has been waived, *a written charge distinctly setting forth the law applicable to the case; ....* " (Emphasis supplied.)

the subject proves they were wrong.[1] Accordingly, I dissent.

One need read only *Jones v. State,* 34 Tex.Cr.R. 490, 30 S.W. 1059 (1895) to understand the impact of abolishing a charge on the law of circumstantial evidence. In a case "predicated entirely upon circumstantial evidence,"[2] the trial court had charged the jury on a portion of that law.[3] Having quoted that portion of the charge set out in the margin, Judge Davidson wrote for the Court:

"Error is urged because this charge fails to instruct the jury that such evidence must be of so conclusive a nature as to exclude every reasonable hypothesis except the guilt of the accused. The essential element of an instruction on the law of circumstantial evidence is that the facts and circumstances necessary to the conviction sought must be such as to exclude every reasonable hypothesis except the defendant's guilt. The evidence must not only be consistent with the prisoner's guilt, *but it must be inconsistent with every other rational conclusion.*[4] [Host of citations omitted.]"[5]

Now, in another century we are told that such a charge—given countless times over more than a hundred years when an accused pleading not guilty was not permitted to waive trial by jury [6]—"is a confusing . . . charge where the jury is properly instructed on the reasonable doubt standard of proof." The truth of the matter is that the Court is abolishing a significant measure of assurance that a verdict of guilt in a circumstantial evidence case is properly informed and well grounded.[7]

The majority draws heavily from one feature of the opinion of the Supreme Court in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), but does not mention the other discussion about whether the jury had been "properly instructed on the standards for reasonable doubt." Thus, water is taken but the bucket is tossed aside.

Though the Supreme Court opined that "this section of the charge should have been

---

1. "And hence it is that our lawyers . . . tell us that the law is the perfection of reason, and that it always intends to conform thereto, and that what is not reason is not law. Not that the particular reason of every rule in the law can at this distance of time be always precisely assigned; but it is sufficient that there be nothing in the rule flatly contradictory to reason, and that the law will presume it to be well founded." 1 W. Blackstone Commentaries § 70.

2. Judge Henderson did not agree; his dissent is at 34 Tex.Cr.R. 490, 31 S.W. 664.

3. "In order to warrant a conviction on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt, and all the facts necessary to such conclusion must be consistent with each other and with the main fact sought to be proved, and the circumstances, taken together, must be of a conclusive nature, leading in the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty of the guilt of the accused."

4. All emphasis is mine unless otherwise indicated.

5. Starkie on Evidence, § 863 was quoted approvingly, *viz:*
"The force of circumstantial evidence being exclusive in its nature, and the mere coinci-

dence of the hypothesis with the circumstances being, in the abstract, insufficient, unless they exclude every other supposition, it is *essential* to inquire with the *most scrupulous attention* what other hypothesis there may be which may agree wholly or partially with the facts in evidence."

6. See Special Commentary following Article 1.13, V.A.C.C.P.

7. In *Trejo v. State,* 45 Tex.Cr.R. 127, 74 S.W. 546 (1903), Presiding Judge Davidson cautioned:
"Where an issue in a case is left in doubt by the evidence, that doubt should always be solved in favor of the accused. If the presumption of innocence and reasonable doubt mean anything, it is of a peculiar force at this particular point. The facts should never be resolved in favor of guilt or against reasonable doubt by the trial court in submitting a charge upon the law. While it is true that the circumstances may be so close and cogent, throwing the accused in such juxtaposition with the main fact that it may not require a charge upon circumstantial evidence, yet, where the facts are in doubt upon this theory, it is the safer and sounder rule to charge in regard to circumstantial evidence." *Id.,* 74 S.W. at 548.

in terms of the kind of doubt that would make a person hesitate to act, see *Bishop v. United States,* 71 App.D.C. 132, 107 F.2d 297, 303, rather than the kind on which he would be willing to act," *Holland,* supra, at 140, 75 S.Ct. at 138, the majority fails to provide *any* definition of reasonable doubt to fill the void. The accused is stripped of the benefit of a charge on circumstantial evidence and then loses the protection of a definition of reasonable doubt.

Last May the majority, claiming to be reducing confusion on the part of appellate judges and the trial bench and bar over the Carving Doctrine, abandoned it "for the compelling reason that it encourages crime." *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1982). Today the majority purports to remove confusion from the minds of jurors. Together, they mean that fundamental principles in the criminal law jurisprudence of Texas are being systematically renounced by determined minds—and about that there is no confusion.[8]

To this exercise of judicial will, I dissent.[9]

TEAGUE, Judge, dissenting.

Sir John Fortescue once wrote, see *De Laudibus Legum Angliae,* Ch. 27, that he would prefer that twenty guilty persons should escape the punishment of death, than one innocent person be executed. For my part, I would prefer that twenty juries each be "confused" by an instruction on the law of circumstantial evidence than see one innocent accused person imprisoned or executed because of the lack of an instruction on the law of circumstantial evidence.

The importance of giving proper instructions to a jury by a trial court should never be questioned, especially when one considers the obvious purpose the charge serves: "The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood ..." *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). See also *Brown v. State,* 617 S.W.2d 234 (Tex.Cr.App.1981); *Doyle v. State,* 631 S.W.2d 732

---

**8.** While still a member of this Court Judge Roberts presented his views in a dissenting opinion, portions of which I now excerpt and adopt as my own; *viz:*

"A passing majority of the court 'now hold that such a charge is improper.' It seems a little late in the game to be recognizing the impropriety. The legislature, which has the power to prescribe certain contents of the court's charge, has met more than 50 times since 1879, and it has not acted to correct the impropriety. The State of Texas, speaking through its elected district attorney, has not claimed that the charge was improper; its motion for rehearing merely argues that such a charge was not required by the evidence in this case. Only the State Prosecuting Attorney, who is appointed by the majority of this court, has asked it to 'wipe away' this charge from our jurisprudence.

The court says in the text that it will follow what *Holland v. United States,* 348 U.S. 121 [75 S.Ct. 127, 99 L.Ed. 150] (1954), called 'the better rule ... that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.' It says in the text that it joins 'a growing trend of state courts' which 'have followed *Holland* in abolishing the requirement of a charge where the jury is properly instructed on the reasonable doubt standard;' it is only in the footnotes that we find out that Texas is abolishing the requirement of

the charge even though its juries are *not* properly instructed on the reasonable doubt standard. This duplicity is laughable or appalling, depending on whether one is more or less cynical about the goal of rational adjudication.

I am not such a slave to stare decisis as to adhere to holdings that are not reasonable or rational, simply because they are old. *See Butler v. State,* 493 S.W.2d 190, 198 (Tex.Cr.App.1973) (Roberts, J., dissenting). But the fact that other jurisdictions have followed a different rule does not make our rule unreasonable or irrational. The majority have not given any reason for abolishing this rule, although the court is required by statute to do so. [Tex.Code Crim.Proc. art. 44.24(d)]." [Emphasis original]

**9.** The majority is moving the Court along a course that is ruefully disquieting to this writer. Elsewhere I have opined that during the ninety years of its existence, with certain mandated exceptions, "the Court has continued to honor the policy of *stare decisis,* and thereby provide the criminal justice system with rules having the value of predictability." "Trial by Common Sense Views of a Myopic Monthly Magazine," Vol. 17, No. 1 (July-September 1982) 3 at 7. That was written before the hundred and five year old Carving Doctrine was blunted and abandoned in *McWilliams,* supra.

(Tex.Cr.App.1982). Additionally, a jury charge instructs a jury as to the standards it must use in evaluating the evidence which has been presented to it, and as to what must be proved before it may find the accused guilty of the offense charged against him. It has long been said that circumstantial evidence is as probative as direct evidence. However, that maxim pertains solely to credibility of the evidence and to the actual facts proved. There exists a distinction between direct and circumstantial evidence which requires a different analysis to determine whether a fact has been proved beyond a reasonable doubt, the ultimate test to which evidence must be subjected to determine its sufficiency. The distinction was forcefully presented by Judge Domenick Gabrielli of the New York Court of Appeals in that court's recent decision of *People v. Kennedy*, 47 N.Y.2d 196, 417 N.Y.S.2d 452, 391 N.E.2d 288 (N.Y.Ct. App.1979), which should be required reading by those persons who favor abolishing a charge on circumstantial evidence, as it might change their minds.

A charge on circumstantial evidence, in a proper case, has been required in Texas for over 100 years. See *Hunt v. State*, 7 Tex. App. 212 (1879); *Ross v. State*, 9 Tex.App. 275 (1880). And the majority today has not given any sound reason why it should not be a part of our law for the next 100 years.

I find that the end result of the majority opinion will itself cause much confusion, at the trial court level as well as at the appellate court level. Without guidance, the chances of an unjust jury verdict in the future will become greater and greater because of the simple fact that prosecuting attorneys throughout the State will ask juries to pile inference upon inference in order to find defendants guilty. Past reversals of this Court, because the evidence in a circumstantial evidence case was insufficient, are irrefutable proof that an unelaborated reasonable doubt instruction, standing alone, will be inadequate to protect the innocent accused from unjust conviction based upon evidence of suspicious circumstances.

The majority's reliance on *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), as its authority to abolish the requirement that in a proper case a charge on circumstantial evidence must be given, is dubious to say the least when one carefully reads the opinion and learns that the holding of the Court was prefaced on the fact that if an instruction was not given, nevertheless, the jury would be properly instructed on the standard for reasonable doubt. In Texas, the phrase "reasonable doubt" need not be defined in the charge of the court, and the majority makes no such requirement in its opinion. Hence, in the future, juries not only will be without guidance as to applying the law of circumstantial evidence to a particular case, but in addition will be without guidance as to the real meaning of the phrase "reasonable doubt". I find that none of the reasons stated by the majority in its opinion are sufficient to warrant such a dramatic and unwarranted change in the criminal law of this State. A cursory analysis and examination of the annotations listed under Volume 23A Corpus Juris Secundum, Criminal Law Sections 1250 and 1252, indicates that at least 41 States of the Union have utilized cautionary instructions to the jury on the use of circumstantial evidence at one time or another. At least 12 States of the Union have reaffirmed the instruction's use since 1970. See *State v. Lasley*, 583 S.W.2d 511 (Mo.1979).

Today's opinion will cause confusion to exist in the appellate courts of this State as the majority has left open the question of what standard of review this Court will apply in future circumstantial evidence cases. Implicitly, the former standard of review still exists.* But if this Court continues to apply the former standard of review, when a jury in a particular case was not instructed to apply that standard, I foresee a sharp increase of needless reversals by the appellate courts of this State. On the other hand, if this Court does not continue to apply the former standard of

* E.g., *Carlsen v. State*, No. 63,987, March 1, 1983 (En Banc Opinion).

review, then more defendants will be imprisoned or executed on the basis of a dubious showing of guilt; and the occurrence of the ultimate horror in criminal law, the unjust punishment of an innocent man, can only increase.

When Iago left Desdemona's handkerchief in Cassio's lodgings, see Shakespeare's *Othello,* Othello could surely have profited from consideration of some cautionary advice as to the unreliability of circumstantial evidence. And we all know what happened to Othello, don't we? Let us, however, hope and pray that the same tragic ending is not in store for accused criminal defendants of this State, who are confronted with beguiling evidence of suspicious circumstances, but who are judged by juries which are not favored with an instruction on the law of circumstantial evidence.

In any event, the mighty circumstantial evidence charge in our law is now consigned by the majority opinion to its death and burial in the refuse heap of Texas law, preceded in death only recently by the doctrine of carving. See *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1982).

To the majority decision, I respectfully dissent. To that great warrior of criminal law, who has served us well, I can only say: Mortis momentum est ultimum vitae momentum.